UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DEBORAH M. HEUSINGER,

                        Plaintiff,

                -vs-                                                    14-CV-728-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                        Defendant.

---

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (ELIZABETH ANN HAUNGS, ESQ., of Counsel), Amherst, New York, for Plaintiff

                              WILLIAM J. HOCHUL, JR., United States Attorney (HEETANO SHAMSOONDAR, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated October 8, 2015 (Item 12).

Plaintiff Deborah M. Heusinger initiated this action on September 9, 2014, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Act, respectively. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (see Items 8, 10). For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on July 14, 1961 (Tr. 221).[1] She completed one year of college and completed specialized training to become a licensed practical nurse ("LPN"), working in that profession from 1980 through 2011 (*see* Tr. 74, 256). She also obtained certification as an emergency medical technician (EMT) in 2004 (T. 67).

Plaintiff filed applications for SSDI and SSI benefits on May 5, 2011, alleging disability due to a back injury and headaches, with an onset date of September 4, 2008,[2] when she sustained injuries in a motor vehicle accident (Tr. 221-34, 255, 321). The applications were denied administratively on August 25, 2011 (Tr. 100-01). Plaintiff requested a hearing, which was held on August 22, 2012, before Administrative Law Judge ("ALJ") Robert T. Harvey (Tr. 62-93). Plaintiff appeared and testified at the hearing, and was represented by counsel.

On September 10, 2012, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 105-14). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the amended onset date, and at steps two and three, that plaintiff's "severe" (discogenic cervical/thoracic spine, lower back pain, and headaches) and "non-severe" (left elbow epicondylitis and ulnar nerve/cubital tunnel

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

[2]Plaintiff's onset date was later amended to September 7. 2009, based on substantial gainful activity ("SGA") during an unsuccessful work attempt in May-September 2009 (*see* Tr. 321).

syndrome) impairments, considered alone or in combination, did not meet or equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 107-08). The ALJ then discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments, including the objective medical evidence, opinions from treating and consultative medical sources, and plaintiff's testimony and written statements about her symptoms, and determined that plaintiff had the residual functional capacity ("RFC") to perform "light" work,[3] with additional exertional and non-exertional limitations (Tr. 108-12). With regard to medical source opinion evidence, the ALJ referred to the August 26, 2012 functional capacity assessment and opinion of Dr. Molly Zittel, D.O. (Tr. 449), one of plaintiff's treating physicians, which contained significantly more restrictive functional limitations than the assessed RFC, but determined that this opinion was entitled to" little weight" because, among other reasons, "there is no longitudinal history of treatment with Dr. Zittel" (Tr. 112). The ALJ instead gave "significant weight" to the medical source statement in the August 4, 2011 report of consultative orthopedic examining physician Dr. Donna Miller, D.O., indicating "moderate" functional limitations (Tr. 112, 409-12), and also noted his reliance on the opinion of Dr. Cameron B. Huckell, M.D., plaintiff's treating orthopedist, that as of August 26, 2010, plaintiff was still

---

[3]"Light work" is defined in the regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

partially disabled as a result of the September 2008 accident, but was "able and willing to work, however her current low back condition would be best suited for the 11 PM to 7 AM shift as to avoid excessive physical demand work" (Tr. 112, 402).

At step four, the ALJ found that although plaintiff could not perform her past relevant work as an LPN, there were other jobs that exist in significant numbers in the national economy that plaintiff could perform, considering her age, education, work experience and RFC (Tr. 113). Accordingly, at step five, the ALJ found that plaintiff was not disabled within the meaning of the Act, and not entitled to SSDI or SSI benefits (Tr. 114).

On February 12, 2013, the Appeals Council vacated the ALJ's hearing decision and remanded the claims to the ALJ for further administrative proceedings (Tr. 120-22). The Appeals Council found several problems with the ALJ's analysis, including his failure to provide an adequate evaluation of Dr. Zittel's treatment records and medical source statements, and a lack of clarity with respect to the assessment of plaintiff's RFC. The Appeals Council provided specific instructions for the ALJ follow on remand, directing him to (1) further develop the administrative record by obtaining additional evidence from plaintiff's treating and/or consultative medical sources regarding the functional limitations resulting from her impairments; (2) obtain updated records from Dr. Zittel, and provide further evaluation of Dr. Zittel's opinions pursuant to the governing Social Security regulations and rulings; and (3) obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on regarding plaintiff's occupational base (Tr. 121-22).

On July 24, 2013, a second hearing was held before ALJ Harvey (Tr. 45-61). Plaintiff again appeared with counsel and testified, and VE Donald Schader also testified

(Tr. 56-60).  On August 13, 2013, the ALJ issued a new decision, once again finding that plaintiff was not disabled under the Act (Tr. 26-39).  This decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on July 21, 2014 (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to comply with the Appeals Council's directives on remand to further develop the record and to properly evaluate the treating physician's opinion.  *See* Items 8-1, 11.  The government contends that the Commissioner's determination should be affirmed because the ALJ fully complied with the Appeals Council's order, and the determination was otherwise made in accordance with the pertinent legal standards and based on substantial evidence.  *See* Item 10-1.

## **DISCUSSION**

I.   **Scope of Judicial Review**

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from

the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

**II.      Standards for Determining Eligibility for Disability Benefits**

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the

residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a

vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III. Plaintiff's Motion

Plaintiff's primary contention in support of her request for reversal of the Commissioner's final determination is that the ALJ did not fully comply with the Appeals Council's remand directives to further develop the administrative record with respect to plaintiff's treatment with Dr. Zittel, and to properly consider and evaluate Dr. Zittel's findings and opinions in accordance with the requirements of the Social Security regulations and rulings. As explained in numerous Second Circuit opinions, the regulations "recognize a 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013). Under this rule, "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").

When the ALJ does not accord controlling weight to the medical opinion of a treating physician, the regulations require that the ALJ's written determination must reflect the consideration of various factors, including:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *accord* 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). The ALJ must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted). The notice of determination must "always give good reasons" for the weight given to a treating source's opinion, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and the ALJ "cannot arbitrarily substitute his own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983), *quoted in Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1991); *see also* Social Security Ruling ("SSR") 96–2p, 1996 WL 374188 (S.S.A. July 2, 1996) ("Treating source medical opinions are still entitled to deference … [and] [i]n many cases, [the opinion] will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."); SSR 96–5p, 1996 WL 374183 (S.S.A. July 2, 1996) (When assessing RFC, "[a]djudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 and 416.927, providing appropriate explanations for accepting or rejecting such opinions.").

As indicated above, in his original hearing decision the ALJ discussed the findings and opinions expressed by Dr. Zittel in her August 26, 2012 functional capacity assessment–specifically, that plaintiff could lift and carry only five pounds; could stand and/or walk less than two hours in an eight hour workday; could sit for two to four hours in an eight hour workday; was unable to maintain any position for more than two hours at a time; and would need to lie down or recline for two hours during the workday to relieve back pain (*see* Tr. 449). However, the ALJ gave these findings and opinions "little weight," finding conflict with plaintiff's hearing testimony that she was able to lift a gallon of milk, as well as with Dr. Miller's consultative findings of "moderate" physical limitations in several areas of work-related functioning (Tr. 112). The ALJ also discounted plaintiff's testimony that she treated with Dr. Zittel on a monthly basis since 2010, stating that "Dr. Zittel's records show only four office visits, with the last office visit on April 5, 2010. Therefore, there is no longitudinal history of treatment with Dr. Zittel" (*id.*).

In its remand decision, the Appeals Council referenced treatment records from Aurora Family Health Care, P.C. ("AFHC") which indicate that plaintiff saw Dr. Zittel on at least two occasions in 2012 (*see* Tr. 433-37), as well as a partially legible "Medical Examination For Employability Assessment" dated July 2012 and bearing Dr. Zittel's signature (*see* Tr. 446-47), calling into question the ALJ's conclusion with respect to the weight to be accorded to Dr. Zittel's opinion as to plaintiff's functional capacity, and warranting further development and reevaluation of Dr. Zittel's medical findings and opinions. As reflected in the record, on March 5, 2013, the Social Security Administration Office of Disability Adjudication and Review ("ODAR") complied with the Appeals Council's directive by sending Dr. Zittel a request for "[a]ll treatment records from 4-5-10 to the

Present" (Tr. 336), and on March 11, 2013, AFHC responded by transmitting plaintiff's treatment records dating from June 10, 2009 through August 20, 2012 (*see* Tr. 450-82).[4] The record also reflects that AFHC subsequently transmitted to ODAR Dr. Zittel's treatment notes from a visit on November 28, 2012 (Tr. 483-84), and an updated "Medical Examination for Employability" form signed by Dr. Zittel on July 22, 2013 (Tr. 487-88).

In his decision after remand, ALJ Harvey adhered to his previous RFC assessment, once again concluding that the record contained insufficient evidence of a longitudinal history of Dr. Zittel's treatment of plaintiff beyond the four office visits ending in April 2010 (Tr. 36-37). The ALJ stated that he complied with the Appeals Council's directive to contact Dr. Zittel (referring to the March 5, 2013 letter from ODAR), but received no response (Tr. 36). However, as indicated above, the court's review of the record as a whole reveals that Dr. Zittel's treatment notes were included as part of the records submitted by AFHC in response to the ALJ's request, documenting plaintiff's treatment history at AFCH between June 2009 and November 2012, and providing a substantial basis for an assessment of the length, nature and extent of plaintiff's treatment relationship with Dr. Zittel and other medical sources at AFHC.

The court's review also suggests that any error to be ascribed to the ALJ's belief that Dr. Zittel did not respond to his request for additional records must be considered harmless. It is clear that, in reaching his decision after remand, the ALJ considered the records submitted by AFCH, which included Dr. Zittel's treatment notes and functional assessments dated July 18, 2012 (Tr. 476-77), August 26, 2012 (Tr. 449), and July 22,

---

[4]A cover page from this transmission indicates that these treatment records were compiled and transmitted by Arlene Corbett, identified as "agent" of Dr. Zittel (*see* Tr. 451).

2013 (Tr. 488), along with notes of plaintiff's treatment at AFCH on several other occasions that were not signed by the provider (*see, e.g.*, Tr. 453-61, 470, 474-75, 478-81; *see also* Tr. 36-37). Based on this review, the court has little trouble reaching the conclusion that the ALJ adequately complied with the Appeals Council's remand directive to further develop the administrative record by obtaining additional evidence from plaintiff's treating medical sources, including updated records from Dr. Zittel.

Furthermore, in his decision on remand, the ALJ provided a comprehensive list of his reasons for according little weight to Dr. Zittel's medical source statements as to plaintiff's functional limitations, primarily focusing on the inconsistency of the assessed restrictions with the objective medical evidence–including the relatively mild findings and observations in Dr. Zittel's own treatment notes, and in the notes of other treating sources at AFCH (*see* Tr. 36-37). The ALJ also noted plaintiff's testimony regarding her relatively wide range of daily activities, and indications in the records of her relatively mild treatment regimen (Tr. 37). He again explained his reasons for according significant weight to Dr. Miller's findings as an unbiased consultative examiner that plaintiff exhibited functional limitations in several areas of work-related activity consistent with the postural and environmental restrictions incorporated in the ALJ's assessment of plaintiff's RFC for light work (Tr. 35, 37). Aside from his apparent misreading of the record as to the length, nature and extent of the treatment relationship, the ALJ's written determination reflects his consideration of the requirements set out in sections 404.1527 and 416.927, and provides an appropriate explanation for the weight he gave to Dr. Zittel's findings and opinions, as he was directed to do by the Appeals Council in its decision on remand.

Based upon this review of the ALJ's decision in light of the record as a whole, the court finds that the ALJ adequately complied with the Appeals Council's remand directives to further develop the administrative record with respect to plaintiff's treatment with Dr. Zittel, and to properly consider and evaluate Dr. Zittel's findings and opinions in accordance with the requirements of the Social Security regulations and rulings. Accordingly, plaintiff is not entitled to reversal of the Commissioner's final determination.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision after remand was reached upon proper application of appropriate legal standards, and is supported by substantial evidence. Therefore, the Commissioner's final determination must be upheld.

Plaintiff's motion for judgment on the pleadings (Item 8) is denied, and the Commissioner's motion for judgment on the pleadings (Item 10 ) is granted. The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

                                                /s/ John T. Curtin
                                                JOHN T. CURTIN
                                                United States District Judge

Dated:   November 20, 2015
p:\pending\2014\14-728.ssdi.si.nov12.2015